UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Edward Kivel and Lisa Mensing-
Kivel,

             Plaintiffs,              **MEMORANDUM OPINION**
                                             **AND ORDER**
     v.                                  Civil No. 05-2926 ADM/JSM

ABN AMRO Mortgage Group,
Inc.,

             Defendant.

_____

Court J. Anderson, Esq., Henson & Efron, P.A., Minneapolis, MN, on behalf of Plaintiffs.

Chad A. Schiefelbein, Esq., Vedder, Price, Kaufman & Kammholz, P.C., Chicago, IL, and Michael J. Steinlage, Esq., Larson • King, LLP, St. Paul, MN, on behalf of Defendant.

_____

## I. INTRODUCTION

On April 4, 2006, oral argument before the undersigned United States District Judge was heard on Defendant ABN AMRO Mortgage Group, Inc.'s ("ABN") Motion to Dismiss [Docket No. 10]. In their Complaint [Docket No. 1], Plaintiffs Edward Kivel and Lisa Mensing-Kivel (collectively, "the Kivels") allege violation of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691, common law fraud, and violation of Minnesota Statutes §§ 47.206, 58.13, and 58.14. ABN has also filed a Request for Judicial Notice [Docket No. 15]. For the reasons set forth herein, ABN's Request for Judicial Notice is granted and its Motion to Dismiss is denied.

## II. BACKGROUND[1]

In early March 2004, the Kivels received phone solicitations from WealthSpring

---

[1] In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d 110, 112 (8th Cir. 1994).

Mortgage Corporation ("WealthSpring"), a mortgage broker, to refinance their home. Compl. ¶¶ 6-7. On March 12, 2004, the Kivels met with a WealthSpring representative and signed a Rate Lock Reservation Agreement for a loan amount of $325,000 with a 4.875% interest rate for a term of 20 years, with no closing fees or costs. Compl. Ex. [Docket No. 2] A. The agreement lists ABN as the lender. Id. On that same date, the Kivels also completed a loan application on the same terms. Compl. Ex. B. On March 15, 2004, the Kivels received a "Rate Lock Commitment" form from WealthSpring which states the same loan terms specified in the previous documents signed by the Kivels. Compl. Ex. C.[2]

On March 23, 2004, the Kivels received disclosures from Interfirst Wholesale Mortgage Lending, a division of ABN,[3] including a Truth in Lending Disclosure Statement, a Good Faith Estimate, a Flood Hazard Determination, a RESPA Servicing Disclosure, an Equal Credit Opportunity Act Notice, and a Notice of Right to Receive a Copy of Your Appraisal. Compl. Ex. C. The disclosure documents contained a loan amount that was $4,500 dollars greater than the $325,000 loan amount agreed to by the Kivels and recited in the previous documents. Id.[4]

The Kivels allege that without disclosure to them and without their consent, $4,500 was added to their loan amount as an origination fee to be paid to WealthSpring. Compl. ¶¶ 12-13.

---

[2] In the Complaint, the Kivels aver that they also received a Good Faith Estimate ("GFE") from WealthSpring on or about March 12, 2004 that included the terms initially agreed upon, and that a copy of the GFE is attached as Exhibit C. Compl. ¶ 10. However, the document entitled Good Faith Estimate in Exhibit C is from ABN, dated March 23, 2004, and lists the loan amount as $329,500. Compl. Ex. C. The "Rate Lock Commitment" form in Exhibit C does restate the terms initially agreed upon.

[3] Some of the relevant documents refer to Interfirst, a division of ABN. For ease of reference, the lender will be referred to as ABN.

[4] In the Complaint, the Kivels aver that on or about March 23, 2004, they received a Good Faith Agreement from ABN containing the higher loan amount. Compl. ¶ 11.

The Kivels, who allege they relied on representations of no costs or fees on the loan, complained about the additional fee to both WealthSpring and ABN. In response, WealthSpring told the Kivels that it was having a difficult time getting ABN to approve the loan. Id. ¶¶ 12-14. The Kivels claim that internal WealthSpring documents show that WealthSpring no longer pursued the Kivels' business after they complained about the additional fee of $4,500. Id. ¶ 15.

Around March 30, 2004, ABN instructed its appraiser not to conduct an appraisal of the Kivels' home, and told WealthSpring that it was declining the Kivels' loan application because a "negative environment condition" existed on their property. Id. ¶¶ 16-17. Soon thereafter, WealthSpring and ABN informed the Kivels of a possible contamination problem on their property based on the property's location within a Special Well Construction Area. Id. ¶ 18. On April 9, 2004, at the Kivels' request, the Minnesota Department of Health informed WealthSpring that the Kivels' property had no liability or environmental concerns. Id. ¶ 20. On April 16, 2004, ABN again declined the Kivels' loan application. Id. ¶ 21.

The Kivels aver that they repeatedly asked ABN for a written statement of reasons for the loan denial. Id. ¶ 19. On May 5, 2004, the Kivels received a form entitled "Notification and Statement of Reasons for Credit Denial, Termination or Change." Compl. Ex. D. The form indicates that the Kivels' application for new credit was denied due to environmental conditions. Id. On May 6, 2004, at the Kivels' request, WealthSpring provided the Kivels with additional information concerning their credit denial. Compl. Ex. E. A letter from Michael R. Warner states:

> In regards to your concerns with the "environmental issues" on your appraisal, that information was forwarded to WealthSpring after it was received by the appraiser from the county and the township. The appraiser is not an expert on environmental issues nor does his research indicate any special affect on marketability of properties, attributable to

3

>this environmental concern. Upon receiving the above information from the appraiser, the appraisal was stopped, so no formal appraisal was prepared.

Id. The letter included a printout from the ABN computer system which stated that the Kivels' loan was "declined due to neg[ative] environmental conditions indicated on the appraisal." Id.

The Kivels contend that prior to May 6, 2004, ABN's internal documentation showed that the Kivels' loan application was "conditionally approved." Compl. ¶ 23. The Kivels further allege that on May 6, 2004, ABN temporarily altered its computer information regarding the Kivels' loan application to read "declined due to neg[ative] environmental conditions indicated on the appraisal," but on May 7, 2004, changed the information back to "conditionally approved." Id. ¶¶ 26, 28. The Kivels claim that ABN altered their loan application at WealthSpring's request. Id. ¶ 27. The Kivels further allege that before, during, and after the time that the Kivels' loan application was pending, ABN approved mortgage loans on properties near the Kivels and also located in the Special Well Construction Area. Id. ¶ 29. Finally, the Kivels state that after ABN denied their loan, they did obtain financing elsewhere, but at a higher interest rate. Id. ¶ 30.

On September 2, 2004, the Kivels filed suit against WealthSpring. See Kivel v. WealthSpring Mortgage Corp., Civ. No. 04-3997 DSD/JJG ("WealthSpring litigation"). On November 2, 2005, Judge David S. Doty granted summary judgment to WealthSpring. See Kivel v. WealthSpring Mortgage Corp., 398 F. Supp. 2d 1049, 1058 (D. Minn. 2005). On December 16, 2005, the Kivels commenced the instant litigation against ABN.

4

## III. DISCUSSION

A.     **Motion to Dismiss Standard**

Rule 12 of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In considering a motion to dismiss, the pleadings are construed in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. Hamm v. Groose, 15 F.3d at 112; Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993). Any ambiguities concerning the sufficiency of the claims must be resolved in favor of the nonmoving party. Ossman, 825 F. Supp. at 880. "A motion to dismiss should be granted as a practical matter . . . only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Frey v. City of Herculaneum, 44 F.3d 667, 671 (8th Cir. 1995).

B.     **Judicial Notice**

As an initial matter, ABN asks the Court to take judicial notice of the pleadings, documents, briefs, evidentiary submissions, decisions, and judgment entered against the Kivels in the WealthSpring litigation. The Kivels do not appear to contest this request. Rule 201(d) of the Federal Rules of Civil Procedure states that "[a] court shall take judicial notice if requested by a party and supplied with the necessary information." The Eighth Circuit has stated that "[t]he district court may take judicial notice of public records and may thus consider them on a motion to dismiss." Stahl v. United States Dep't of Agric., 327 F.3d 697, 700 (8th Cir. 2003). ABN avers that the documents from the WealthSpring litigation are of public record and readily available on the Court's Electronic Filing/Case Management System. Request for Judicial

Notice ¶ 3. Therefore, the Court grants ABN's Request for Judicial Notice and takes judicial notice of the pleadings, documents, briefs, evidentiary submissions, and decisions from the Kivels' WealthSpring litigation.

**C.     ABN's Motion to Dismiss**

ABN argues that the factual allegations made by the Kivels in the instant litigation are contradicted by the factual allegations made by the Kivels in the WealthSpring litigation, and that the facts asserted by the Kivels in the WealthSpring litigation show that the Kivels' loan application was never completed, no adverse action was taken against the Kivels, and ABN committed no violations of law. Alternatively, ABN argues that the factual allegations made by the Kivels in the instant litigation are insufficient to state a claim for an ECOA violation. In addition, ABN avers that the Kivels' state law claims fail for lack of "statutory standing." ABN alleges that the claims can not be pursued unless they benefit the public, and the Kivels' claims concern a purely private dispute. Finally, ABN argues that the Kivels' common law fraud claim fails because the Kivels did not plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

The Kivels respond that the allegations in their Complaint satisfy the liberal notice pleading requirements contained in Rule 8(a) of the Federal Rules of Civil Procedure, and that they have pled fraud with particularity, according to Rule 9(b). The Kivels additionally assert that the factual allegations made in the WealthSpring litigation are not contradicted by the factual allegations made in this litigation, but to the extent that any factual contradictions do

exist, they are the result of misrepresentations made by ABN to the Kivels.[5]

Rule 8(a) of the Federal Rules of Civil Procedure states that pleadings must include "a short and plain statement of the claim showing that the pleader is entitled to relief." "The essential function of notice pleading 'is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1056-57 (8th Cir. 2004) (citation omitted). The Kivels have satisfied the liberal notice pleading requirements with respect to the ECOA and state statutory claims, and as such, those claims should remain for discovery. The parties have identified numerous factual disputes that are not properly resolved on a motion to dismiss.

For example, ABN argues that the Kivels' § 1691(a)(3) claim, which attempts to put the "cart before the horse," must be dismissed because ABN could not possibly have denied the Kivels' application as a result of the Kivels' request for an adverse action notification. The Kivels respond that their Complaint sufficiently alleges that their repeated requests for an adverse credit notification caused ABN to decline the Kivels' loan. While such a chain of events seems unlikely, the Kivels have sufficiently alleged in their Complaint, for purposes of satisfying liberal notice pleading requirements, that such a chain of events may actually have occurred. According to the Kivels' Complaint, the Kivels were first informed around March 30, 2004 that their application was being rejected. Compl. ¶¶ 17-18. Thereafter, the Kivels allegedly

---

[5] The Kivels filed an Affidavit in Opposition to Motion to Dismiss [Docket No. 18] with attached Exhibits. ABN argues that the Affidavit and its Exhibits are procedurally improper and should be stricken and/or disregarded. The Court did not rely on or consider the Affidavit or its attached Exhibits in rendering this decision.

repeatedly asked for a written statement of reasons for the determination, but were not provided with a formal ECOA adverse credit notification until May 5, 2004. Id. ¶¶ 19, 22. In the meantime, ABN allegedly declined the Kivels' application again on April 16, 2004, even though ABN internal documentation reflects that the loan application was "conditionally approved" prior to May 6, 2004 and after May 7, 2004. Id. ¶¶ 21, 23. Such a strange sequence of events, pled in the Kivels' Complaint and accepted as true for purposes of this Motion, are sufficient to state a claim.

Similarly, § 1691(d)(1) requires a creditor to notify an applicant of action taken on an application within thirty days after receipt of a completed application. ABN argues that the Kivels did not allege in their Complaint that they provided ABN with a completed loan application. However, in paragraph nine of their Complaint, the Kivels state that "[t]he March 12, 2004 meeting also resulted in a 'completed application' as that term is defined in 12 C.F.R. § 202.2(f)." Again, the Kivels have satisfied the liberal notice pleading requirements and have stated a claim sufficient to survive ABN's Motion to Dismiss. With regard to the Kivels' claim that ABN violated § 1691(e) by refusing to provide the Kivels with a copy of the appraisal allegedly conducted on their home, ABN asserts the Kivels failed to specifically allege that they made a "written request" for the appraisal. However, the Kivels can cure this defect by amending their Complaint, as they have requested to do. ABN additionally argues that the Kivels' claim fails because the Kivels affirmatively allege in their Complaint that no appraisal existed. The record at this early stage is confused as to whether an appraisal was conducted or not. The Kivels have made sufficient allegations to state a claim and to put ABN on notice. Fact development during discovery will likely reveal whether an appraisal exists, which will

ultimately determine the viability of this claim.

Also, ABN contends that the Kivels' state statutory claims are deficient because they concern purely private matters and do not in any way benefit the public. The Kivels contend that they are entitled to some discovery to determine whether their claims are public or private in nature. The Kivels' Complaint generally alleges that ABN allows WealthSpring to influence ABN's acceptance or denial of loan applications based on reasons unrelated to the merits of the applications. If such a scheme exists, then the Kivels' claims arguably may benefit the public. As a result, the Kivels are entitled to some discovery to determine whether there is a repeating pattern of similar loan denials; however, discovery will not be allowed to become a "fishing expedition."

The Kivels have not, however, satisfied Rule 9(b)'s requirement that fraud be pled with particularity. See United States v. St. Luke's Hosp., Inc., 441 F.3d 552, 556 (8th Cir. 2006) (citations omitted) ("Put another way, the complaint must identify the 'who, what, where, when, and how' of the alleged fraud."). The Kivels allege that ABN made false representations concerning their loan application, specifically, that the application was declined due to negative environmental conditions indicated in the appraisal. However, the Kivels fail to identify with any particularity the individuals associated with the alleged fraud. The Kivels state that it is impossible for them to identify who within ABN is responsible for the misrepresentations without the benefit of discovery. However, the Kivels must at a minimum set forth with particularity the source of their information and the reasons for their belief to satisfy the requirements of Rule 9(b). See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 550 (8th Cir. 1997) ("Where allegations of fraud are explicitly or, as in this case, implicitly, based only on

information and belief, the complaint must set forth the source of the information and the reasons for the belief."). The Kivels' fraud claim is not dismissed at this time; instead, the Kivels can amend their Complaint to plead fraud with particularity. See Fed. R. Civ. P. 15(a). ABN will suffer no prejudice from an amendment to the Complaint because ABN has not yet filed an Answer in this case.

Finally, the Court declines to adopt ABN's "collateral estoppel" argument. The Kivels have represented that to the extent there are differences in the facts set forth in the WealthSpring litigation as compared to the facts set forth in the instant litigation, those differences are the result of representations made to the Kivels by an ABN representative, which were later discovered by the Kivels to be inaccurate. It appears that as a result of ABN's representations, the Kivels originally believed WealthSpring was solely responsible for the additional, undisclosed $4,500 fee and the subsequent denial of their loan application. Through discovery in the WealthSpring litigation, the Kivels allegedly learned that ABN bears some responsibility for the denial of their loan application, and the Kivels have adequately stated claims against ABN in their Complaint based on this belief. As a result, the Kivels' claims should not be dismissed at this early stage of the litigation and should remain for discovery.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. ABN's Request for Judicial Notice [Docket No. 15] is **GRANTED**; and

2. ABN's Motion to Dismiss [Docket No. 10] is **DENIED**.  Plaintiffs may amend their Complaint to satisfy Rule 9(b) particularity requirements.


BY THE COURT:


      s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  June 1, 2006.